## JESSE DOUGLASS, BY NEXT FRIEND, v. CENTRAL TEXAS AND NORTHWESTERN RAILWAY COMPANY.

### Decided November 9, 1896.

1. **Writ of Error—Reversal Settling Case.**

   Where a judgment for plaintiff is, on appeal, reversed because there is no evidence to prove a fact material to plaintiff's recovery, on an application conceding that the ruling practically settles the case because no additional evidence can be produced on the issue in question a writ of error is granted as of course, without regard to the correctness or incorrectness of the ruling, and if, on examination, it is found to be correct judgment is rendered for defendant in error. (Pp. 129, 130.)

2. **Negligence—Injury to Child.**

   A train of twenty flat cars stopped for fifteen minutes in front of a house fifty feet from the track. When it started again the plaintiff, a child less than two years old was beneath the cars and was injured. The child was not seen by any of the trainmen, unless about the time the train stopped, when it was on the porch of the house. Held, that there was no evidence of negligence on the part of the employees of the railway company. (Pp. 127 to 130.)

ERROR to Court of Civil Appeals, Fourth District, in an appeal from Ellis County.

The suit was brought by Jesse Douglass, a minor, by next friend, to recover from the railway company damages for personal injuries.   In a former trial the District Court sustained a demurrer to plaintiff's petition, and on appeal the judgment was reversed.   Trial then resulted in a verdict and judgment for $4000 in plaintiff's favor, and, on defendant's appeal, this was reversed by the Court of Civil Appeals.   Writ of error was obtained by appellee on the ground that the ruling practically settled the case.   The material facts and the grounds of the ruling appear in the opinion of that court, delivered May 6, 1896, which is here published.

*A. A. & E. P. Kemble,* for plaintiff in error.—Appellant's position seems to be based upon the proposition that the railway company owes no duty of watchfulness, except at a crossing, and that the company could

not be liable unless the employes actually knew the child was under the train when it moved. This idea repudiates the doctrines laid down in this case in 26 S. W. Rep. and authorities there cited.

Counsel for appellee apprehend that the gravamen of this appeal is an attempt to reverse the previous rulings of Texas and other courts, in a long and unbroken line, to the effect that prudence requires that at all times care shall be exercised according to the surroundings at the time, and such as a prudent man would exercise under the circumstances. Evanisch v. Railway, 57 Texas, 125; Douglass v. Railway, 26 S. W. Rep., 120; Railway v. O'Donnell, 58 Texas, 42. The rule laid down in these authorities is this, "that it is the duty of the railway company to keep a lookout any and everywhere as prudence may dictate at the time and place, and under surroundings."

*Frost, Neblett & Blanding,* for defendant in error.—The plaintiff, being at a place, not a crossing, was a trespasser on defendant's railway track and the defendant owed plaintiff no duty to keep a special guard or lookout to protect him from the peril of the situation in which he was at the time he was injured, unless the employes of defendant operating the train were aware of his presence on the track when the train was moved, or had seen him approaching the track or in such close proximity thereto as would suggest to an ordinarily prudent and cautious person the probability of danger to him. Hearn v. Railway, 34 La. Ann., 160; Cauley v. Railway, 98 Pa. St., 498; Railway v. McLaughlin, 47 Ill. 265; Barney v. Railway, 28 S. W. Rep., 1071; Williams v. Railway, 96 Mo., 283 (s. c. 9 S. W. Rep., 573). Hepfel v. Railway, 51 N. W. Rep., 1049; Railway v. Ried, 31 S. W. Rep., 1060.

The court erred in refusing to give defendant's special instruction No. 5, to the effect: that if defendant's employees in operating the train did not see the child in closer proximity to the track than the doorway of its home, then it is a question for the jury to determine whether such operatives, as reasonably prudent men, should have kept watch to see whether the child would stray from its home and go upon the track; that is, would ordinarily prudent men, in conducting their own affairs, have, under such circumstances, kept supervision of the child for the purpose of shielding it from injury? And if not, defendant is not liable. Such charge announced the proper rule of law as to the ordinary care required of defendant, and was applicable to the law and facts of the case as made by the pleadings and evidence.

The court erred in refusing to grant defendant's motion for new trial, based upon the ground that the verdict of the jury was not supported by the evidence, for the reason that there is no evidence tending to prove that the plaintiff was at any time seen by any of defendant's employes, in charge of the train, before the injury, except when he was in the doorway of his home; and there was no fact or circumstance proved, or in evidence, which was within the knowledge of defendant's operatives in charge of

the train, indicating that the child would probably leave the doorway or yard of its home and place itself in a position of danger.

OPINION OF COURT OF CIVIL APPEALS.

NEILL, ASSOCIATE JUSTICE.—Suit by the appellee for personal injuries inflicted on him by the alleged negligence of appellant, and the judgment appealed from is four thousand dollars.

This case was before the Court of Civil Appeals of the Fifth District on an appeal from a judgment in favor of the present appellant sustaining a demurrer to the plaintiff's petition. On that appeal the court held the petition stated a cause of action and reversed the judgment. (26 S. W. Rep., 892.) The allegations in the petition are fully stated in the report of the case, and need not be repeated.

The facts in the case are briefly as follows: On the 10th of June, 1892, the appellee, Jesse Douglass, a child not then two years old, and his brother, one year older, during the illness of their mother, were in the care of their aunt, Mrs. Eads, who lived at Jeffries Station, on appellant's road. On the morning of that day, about 11 o'clock, the gravel train of defendant, consisting of twenty flat cars, a caboose, tender and engine, came up and stopped at the east switch opposite Mrs. Eads' house. At the time the train was drawn up and stopped the appellee and his brother were out on the platform of the house facing the train. The train remained stationary about fifteen or twenty minutes. Its crew consisted of a conductor, a rear and front brakeman, engineer and fireman. (A sketch of the locality was here inserted in the opinion.)

The house is about fifty feet from the railroad track, and there is a wire fence between it and the house. There is a conflict in the testimony as to whether the child was seen by any of the trainmen prior to his injury. If, however, he was, the testimony shows it was just about the time the train stopped, when he was on the porch or platform C. The ground between the house and track was nearly level, and the track nearly on a level with the ground. There was a wire fence between the house and track, the lower wire of which was loose and hitched up to a post at such a height that appellee could easily walk under it. After the train had remained some fifteen or twenty minutes, it was signaled to move forward, and when it began to move slowly the rear brakeman, at his proper place on the caboose, heard a scream and looking saw a woman running from the house to the train, the center of the train being opposite to the house, and supposing something "was the matter," signaled for "down brakes." The train was stopped, having moved about two car lengths. When it stopped Mrs. Eads was seen pulling her child from under the train. While the train was standing, its aunt being busy in the house preparing dinner, the child strayed from the house and got under the

train. She heard it scream at the starting of the train, and ran to its rescue. The child was injured so that it became necessary to amputate the little finger and the two middle ones of the left hand, and the big toe of the left foot, and from the bottom of the left foot the flesh to the bones.

The court on the issue of negligence instructed the jury as follows:

"It is the duty of the agents and servants of a railway company while engaged in operating its trains to keep a reasonable lookout and to use ordinary care to prevent or avoid injury to persons who may come upon its track. Reasonable care as used in this charge means such care as a person of ordinary care and prudence would exercise under like circumstances to prevent injury to another."

"Negligence is the failure of a person to exercise such care and prudence as a person of ordinary care would have exercised under like circumstances to prevent injury to another."

The jury were then told, if they believed from the evidence the plaintiff's injuries were caused from the negligence of defendant's agents and servants in operating its cars, the plaintiff would be entitled to recover; but, on the other hand, to find for the defendant if the injuries were not caused by the negligence of its servants.

The defendant's counsel requested the court to give the jury the following special charge: "If the employees and operatives of defendant's train by which the plaintiff was injured did not see the child approaching the train nor in closer proximity to the train than the doorway or yard of Miss Eads, the aunt of plaintiff in whose care it is shown he was at the time, then it is for the jury to determine whether the persons in charge of the train should, as reasonably prudent men, have kept a watch on the child to see whether it would stray from its home and go on defendant's track under the train; that is, would ordinarily prudent persons in conducting their own affairs, have, under such circumstances, kept supervision of the child for the purpose of shielding it from injury if it had been seen in the doorway or yard of its own house? If not, then the fact of the child having been injured by defendant's train is alone not sufficient to authorize a verdict for plaintiff."

If there was any evidence in the case warranting a charge upon negligence, the refusal of this charge was error. The main charge was abstractly correct, but it nowhere directed the attention of the jury to and required them to consider the only evidence in the case from which the slightest inference, if any, of negligence could be drawn. This defect would have and should have been cured by giving the instruction requested. But we do not believe the evidence in this case was sufficient to authorize the court in submitting the issue of negligence to the jury at all. Resolving the only conflict in the testimony in plaintiff's favor, and conceding that the evidence establishes that the trainmen saw the child on the porch when the cars moved up and stopped in front of the house, we do not believe that the slightest inference of negligence can be legiti-

mately deduced from the evidence. · Unless a duty is imposed there can be no negligence. While, in this State, it is the duty of servants of a railway operating its trains to use reasonable diligence to discover a child which by reason of its tender years is unable to apprehend and protect itself from danger, and, therefore, incapable of negligence, if on or near its track, to prevent its injury, it has never been supposed to be the duty of such servants when they see a child in the position of safety and where it may be protected from danger by those upon whom the laws of nature have imposed such duty, to keep a watch on it and see that it does not get under standing cars, or to look under the cars before placing them in motion to see that those whose duty it is to take care of it have not allowed it to stray from its place of safety and place itself in one of most imminent peril. Had the appellee and his little brother been seen alone at a place near the track where it might have been reasonably supposed by the train crew that no one was looking to their safety and that from their tender years they might place themselves in danger of being injured by the cars when set in motion, then it might have been a question whether the employees, as reasonably prudent men, should have kept a watch on the children for the purpose of keeping them out of such supposed danger. But when they were seen at the house where the employees of defendant had every reason to believe they would receive the care of its inmates whose duty it was to guard them from danger and were not seen afterwards until the injury was inflicted, we do not believe, under these circumstances, that the law imposed any duty upon appellant's servants to watch the child for the purpose of keeping it out of danger.

·The insufficiency of the evidence to support the verdict, urged as a ground for a new trial, and the refusal of the court to grant it thereon is assigned as error. The motion should have been granted on that ground.

Believing as we do that there was no evidence of negligence adduced on the trial, the judgment of the court below is reversed and the cause remanded, with instructions to the District Court to direct a verdict for the defendant should the evidence on the issue of negligence upon another trial remain unchanged.

*Reversed and remanded.*

### OPINION OF SUPREME COURT.

GAINES, Chief Justice.—This is a writ of error to a judgment of the Court of Civil Appeals, which reversed the judgment of the District Court and remanded the cause for a new trial. The plaintiff in error, a minor, by his next friend, brought the suit to recover of the defendant company damages for personal injuries alleged to have been caused by the negligence of the defendant's servants.

In order to show jurisdiction in this court, the plaintiff in error, among other grounds, alleged that the decision of the Court of Civil Appeals·

"practically settled the case!" An inspection of the opinion of the Court of Civil Appeals satisfied us that its rulings, without additional evidence, were fatal to the plaintiff's recovery and it is alleged in the petition for the writ that no more testimony upon the vital questions in the case can be adduced. We therefore concluded that we had jurisdiction of the case, and following our construction of the recent statute (Rev. Stats., 1895, article 941) granted the writ without reference to the question whether error had been committed or not.

Having examined the case upon its merits we conclude that the Court of Civil Appeals properly reversed the judgment upon the vital issue— namely, whether or not there was any evidence adduced upon the trial which showed negligence upon part of defendant's servants. We think that they correctly held that there was none. The opinion of the court very clearly and satisfactorily sets forth the grounds for that conclusion. We need add nothing to what is there said.

Since we affirm the decision of the Court of Civil Appeals, it becomes our duty under the statute to render judgment here in favor of the defendant (Rev. Stats., 1895, article 941), which is accordingly done.

*Reversed and rendered for appellant.*